Per Curiam.

In each of these three cases the defendant sought to suppress a handgun which had been taken from him by the police. The single issue presented—whether the action of the police officer was reasonable—"must necessarily turn on the facts in each individual case”. (People v Green, 35 NY2d 193, 195.) Because of the number of cases arising in somewhat comparable factual contexts, it may be useful to identify some general guidelines for the resolution of individual cases, with full recognition, however, that there can be no satisfactory frame of reference or template applicable in every instance. At the outset we observe that much weight must be accorded the determination of the suppression court with its peculiar advantages of having seen and heard the witnesses (cf. People v Oden, 36 NY2d 382).
The ultimate determination will depend on a balancing of the legitimate interests of the defendants against the reasonableness and appropriateness of the police action. At least three aspects of each individual transaction should be considered. Was there proof of a describable object or of describable conduct that provides a reasonable basis for the police officer’s belief that the defendant had a gun in his possession? Was the manner of the officer’s approach to the defendant and the seizure of the gun from him reasonable in the circumstances? Was there evidence of probative worth that there had been a *762 pretext stop and frisk or that the police were otherwise motivated by improper or irrelevant purpose? There will be other material considerations, too, in individual cases. Because the totality of the circumstances in each case is necessarily unique, there should be no expectation that comparable significance will always attach to the same or similar factors in different cases.
We turn then to the three appeals which are now before us. In Prochilo, the denial of suppression by Supreme Court should be upheld. An experienced officer, on routine patrol in the 500 block of Flatbush Avenue in Brooklyn, from his vantage sitting in a parked automobile, observed defendant standing watching other officers interviewing passing pedestrians. From a distance of some seven or eight feet the officer saw defendant making continuing hand motions toward his side. The officer then noticed a bulge at defendant’s right hip. The officer left the automobile and as he approached defendant, who was still making the hand motions, observed through defendant’s tight outer clothing the complete outline of a revolver at his side. The officer then reached out and removed a .32 calibre revolver loaded with seven rounds of live ammunition from defendant’s waistband. The evidence warranted the officer’s acting on his belief that defendant had a gun.
In Goings, Supreme Court’s denial of a suppression should likewise be sustained. Officers in the Street Crime Unit were patrolling the Times Square area of New York City in a yellow taxicab. In the brightly lighted area of 42nd Street from the slowly moving cab they observed defendant walking along the sidewalk with a female companion. From a distance of some 20 feet one of the officers saw a bulge in defendant’s . right-hand jacket pocket which struck him immediately as having "the configuration of a handgun”, "the outline of a gun”. The cab parked and the officer approached defendant, displayed his shield and said that he would like to have a word with him. The officer then put his hand on defendant’s pocket, squeezed and felt what the officer believed was a gun. Defendant was arrested and a .32 calibre, short-barrel revolver in a partial brown leather holster with six rounds of live ammunition was taken from his pocket. This case approaches a true stop and frisk. In any event the evidence here, too, warranted the officer’s belief that defendant was carrying a gun.
In Bernard, by some contrast we conclude that the denial of *763 suppression by Supreme Court must be set aside. But the case confirms that criminal cases defy classification by categories. As two officers were on routine motor patrol in central Harlem, a pimp known to one of the officers waved hello, the patrol car pulled to the curb and the pimp and defendant approached the officers in the car. As one of the officers was conversing with the pimp, defendant was standing behind the latter. The officer detected a nervous uneasiness in defendant’s manner and observed that he was standing with his hands in the pockets of his long outer coat, slouched forward from the waist at a 45 degree angle. When the officer told defendant to remove his hands from his pockets defendant did so very slowly and the officer saw a heavy object slide against the material in the right pocket. The officer then got out of the patrol car, tapped defendant’s right pocket and on feeling a hard object, reached into the pocket and removed a .22 calibre six-inch revolver with six rounds of live ammunition. Were there no more we might conclude that the revolver should not have been suppressed. In this instance it was defendant and his companion, not the police, who initiated the encounter. In this circumstance the police officer might naturally have been apprehensive for his safety when approached by a known lawbreaker with another man in his company who was slouched over, and who kept his hands in the pockets of his long coat as the conversation progressed. The inferences thus naturally to have been drawn must be deemed, however, to have been negated on this record. The officer testified that before he reached into defendant’s pocket, defendant had done nothing wrong, that he could not tell what the heavy object appeared to be by looking at the pocket, and that until he had reached into the pocket he had not seen "any part of what appeared to be a gun, a handle, a barrel, or anything like that”. Nor is there anywhere in his testimony any suggestion that at any time he was apprehensive for his own safety. On this state of the record there was nothing in defendant’s standing behind the pimp, in his nervousness or his slouched stature, or the fact that he had his hands in his coat pockets and removed them very slowly when requested to do so, or that a heavy object slid against the material of defendant’s pocket which can be said to be reasonably referable to or indicative of the presence of a revolver.
Accordingly, the order of the Appellate Division in Prochilo should be affirmed; that in Goings should be reversed and the *764 case remitted to the Appellate Division for review of the facts (CPL 470.40, 470.25); and that in Bernard reversed, the motion for suppression granted, the judgment of conviction vacated, and the indictment dismissed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur in Per Curiam opinion.
In People v Prochilo: Order affirmed.
In People v Goings: Order reversed and case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein.
In People v Bernard: Order reversed, motion to suppress granted, judgment of conviction vacated and the indictment dismissed.